IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID LAMAR MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18cv584-ECM-WC |
| | ) | |
| ANDREW SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Dave Lamar Mills ("Mills" or "Plaintiff") filed a Title II application for a period of disability and disability insurance benefits on June 18, 2015. R. 29.  He also filed a Title XVI application for supplemental security income on June 19, 2015. R. 29.   In both applications, he alleged disability beginning July 14, 2012.[2] R. 29.  Both applications were denied at the initial administrative level on October 5, 2015. R. 29.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on June 19, 2017. R. 29.  Following the hearing, the ALJ issued an unfavorable decision on November 24, 2017. R. 39.  The Appeals Council denied Plaintiff's request for review on April 16, 2018. R. 1–

---

[1] Andrew Saul is now the Commission of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Proc. 25(d). See also § 205(g) of the Social Security, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] Plaintiff was previously found to be disabled from January 1, 2008, through April 30, 2009, due to lymphoma of the right forearm. R. 29.  He applied again but was found not disabled from January 7, 2010, through July 13, 2013, the date of the last decision. *Id.*  In this case, neither of those prior decisions were reopened or reevaluated. *Id.*

4.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the Court for review of that decision under 42 U.S.C. § 405(g).  It was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 for all pretrial proceedings and entry of any orders or recommendations as may be appropriate. Doc. 18.  Based on a review of the record and the briefs of the parties, the undersigned recommends that the Court AFFIRM the Commissioner's decision.

## II.   STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).  "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).   Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*." Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## III.    STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. §

423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.  Eligibility for SSI is based on proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to do the following:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security uses a five-step, sequential evaluation process to determine if a claimant is entitled to benefits:

(1)     Is the person currently unemployed?

(2)     Is the person's impairment(s) severe?

(3)     Does the person's impairment(s) meet or equal one of the specific impairments set forth in Listing of Impairments in Appendix I of 20 C.F.R. Pt. 404, Subpt. P?

(4)     Is the person unable to perform his or her former occupation?

(5)     Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2010). An affirmative answer to any question leads either to the next question or, on Steps 3 and 5, to a finding of disability.  A negative answer to any question except Step 3 leads to a determination of not disabled. *McDaniel v. Bowen,* 800 F.2d at 1030; 20 C.F.R. § 416.920(a)–(f).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart,* 357 F.3d 1232, 1237–39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id.*

To perform Steps 4 and 5, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.*  It also can contain both exertional and non-exertional limitations. *Id.* at 1242–43.  At Step 5, the

ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "disabled" or "not disabled." *Id.*

## IV.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty-nine on the alleged date of disability onset. R. 38. Plaintiff has a high school education. R. 38. Following the administrative hearing and employing the five-step process, the ALJ found at Step 1 that Plaintiff has not engaged in substantial gainful activity since July 14, 2012, the alleged date of onset. R. 31. At Step 2, the ALJ found that Plaintiff suffers from the severe impairments of post-traumatic stress disorder ("PTSD"), affective disorder, degenerative disc disease, and residual damage to right arm after lymphoma removal. R. 32. However, at Step 3, in a detailed analysis of Plaintiff's limitations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Subpart P of Appendix 1, 20 C.F.R. Part 404. R. 32–33. The ALJ articulated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work …
> except the claimant can occasionally handle objects and write with the right
> hand. The claimant is limited to low stress work, defined by occasional
> decision making required.

R. 33.  In Step 4, the ALJ concluded that Plaintiff has past relevant work as a case aid

(light, semiskilled work) and a stock clerk (heavy, semiskilled work). R. 38.  The ALJ next

concluded in Step Five that "there are jobs that exist in significant numbers in the national

economy that the claimant can perform." R. 38.  After consulting with a VE at the hearing,

the ALJ determined that Plaintiff is unable to perform past relevant work. R. 38.  Based on

the testimony of the VE, the ALJ then identified the following representative occupations

that exist in significant numbers in the national economy that Plaintiff can perform based

on his age, education, work experience, and RFC: public area attendant, children's

attendant, and page. R. 39.  Accordingly, the ALJ concluded that Plaintiff had not been

under a disability as defined by the Social Security Act from July 14, 2012, through the

date of his decision. R. 39.

## V.   PLAINTIFF'S CLAIMS

Plaintiff filed a pro se Complaint (Doc. 1) and Statement of Issues (Doc. 13).  In

those two documents, Plaintiff asserts that the ALJ failed to give adequate weight and

consideration to his doctors and records from the Veteran's Administration ("VA"). Doc.

1 ¶ 5; Doc. 13 ¶ 5.  He alleges that the ALJ incorrectly relied on the opinion of Dr. Harold

Veits over his primary doctors. Doc. 1 ¶ 9; Doc. 13 ¶ 8.   He claims the ALJ incorrectly

found that he had not received mental health treatment since 2012. Doc. 1 ¶ 6; Doc. 13 ¶

6. He also claims that the ALJ's findings with respect to his RFC were incorrect and that

he has a combination of impairments that are very severe and render him unable to work. Doc. 13 ¶¶ 1, 5.  He argues that the 100% disability determination he received from the VA proves he cannot work and that he has problems with his arm locking up, back pain, stomach pain, and PTSD stemming from his military service. Doc. 1 ¶¶ 1–2; Doc. 13 ¶¶ 2, 4.  He claims he has scar tissue and nerve damage from a 2008 surgery after he was diagnosed with lymphoma. Doc. 1 ¶ 1.  He states that the ALJ was incorrect in finding that he has only a moderate limitation in understanding, remembering, and applying information; that his family members assist him with activities like getting dressed because of his arm; that the ALJ was incorrect in finding that his medical records have no evidence of nerve damage; that he has chronic back pain and is unable to stand for long periods; and that he is depressed and stays to himself. *Id.* ¶¶ 3–10.  Finally, he claims he is unable to do light work because he may have to call out of work three or four times per week with pain and that he may have a mental breakdown and get upset and cry all day. *Id.* ¶¶ 11–12.

Based on Plaintiff's Complaint and Statement of Issues, it appears Plaintiff is presenting two issues for the Court to consider in its review of the Commissioner's decision: (1) whether the ALJ failed to give adequate weight and consideration to Plaintiff's doctors and VA records and (2) whether substantial evidence supports the ALJ's RFC finding that Plaintiff can perform light work.

## VI.   DISCUSSION

### A.   Whether the ALJ failed to give adequate consideration and weight to Plaintiff's VA doctors' opinions and records.

As an initial matter, with respect to Plaintiff's allegation that the ALJ incorrectly relied on the opinion of Dr. Harold Veits over his primary doctors, the record dispels this claim.  Dr. Veits reviewed Plaintiff's medical records in October 2015 but concluded that the record was insufficient to rate Plaintiff's alleged mental impairments. R. 310–18.  The ALJ expressly stated in his decision that he considered Dr. Veits' opinion but assigned it no weight because Dr. Veits had reviewed the record before Plaintiff submitted additional evidence demonstrating that his PTSD and affective disorders were severe impairments. R. 37.   Thus, to the extent that Plaintiff assigns error to the ALJ with regard to his consideration of Dr. Veits' opinion, his claim is without merit.

The record in this case contains three documents from the VA or Plaintiff's VA doctors addressing Plaintiff's disability rating.  The first document, signed in April 2008 by Dr. Henry Barnard and provided to the Alabama Department of Human Resources Food Stamp Program, states that Plaintiff is unable to work due to a "neoplastic process involving the [right] forearm and radius (cancer)," that the condition was permanent, and the date when Plaintiff could return to work was "unknown."[3]  Doc. 13-1 at 1.  The second document is a note signed by Dr. Mark Pilcher, Plaintiff's psychiatrist, and states: "Mr. David Lamar Mills has been treated at the VA clinic since 2011. He has not been able to

---

[3] This document was not submitted during the administrative proceedings below and, thus, is not part of the record. Plaintiff attached the document to the Statement of Issues he filed in this Court on November 8, 2018.  Plaintiff has not demonstrated good cause for the failure to incorporate this evidence into the record, as required by 42 U.S.C. § 405(g); however, even if Plaintiff could demonstrate good cause for including this document, it would have no bearing on Plaintiff's disability determination.  As explained below, it was prepared by one of Plaintiff's doctors before Plaintiff had surgery to remove a cancerous mass from his right arm.  The Government mistakenly identifies the date of this document as April 17, 2018, in its brief, but the upper portion is dated April 17, 2008, and Dr. Barnard signed it on April 18, 2008.  Doc. 13-1 at 1.

work since 2008, due to nerve damage in his [right] arm and PTSD." Doc. 13-1 at 2; R.

688.  The third document is a disability rating from the VA assigning Plaintiff a 100%

disability due to PTSD. R. 447–453.

### 1.   Plaintiff's VA Disability Rating

Despite Plaintiff's contentions, it is evident from the detailed discussion of

Plaintiff's medical records in the ALJ's opinion that he reviewed and considered all of

Plaintiff's VA records. R. 31–39.  The ALJ expressly referenced the VA's disability rating

and acknowledged that VA disability ratings are entitled to great weight. R. 37.  *See Brady*

*v. Heckler,* 724 F.2d 914, 921 (11th Cir. 1984)).   The ALJ also correctly noted that a

decision by another government agency such as the VA regarding a claimant's disabled

status is based on that agency's rules and, therefore, is not binding on the Commissioner.

R. 37; *see also* 20 C.F.R. § 404.1504.  The ALJ discussed the differences in the two

standards applied by the VA and the Commissioner of Social Security, noting that, unlike

social security claims, all reasonable doubt is resolved in favor of the claimant in VA

disability cases. R. 37.  He further explained that he gave the VA determination "great

consideration" but that it was inconsistent with the overall evidence of record, such as

Plaintiff's admitted activities of being able to live alone, having regular and consistent

contact with friends and family, and visiting with his young child. R. 37.  Although the

ALJ did not assign an express level of weight to the VA disability rating itself, he is not

required to state the precise amount of weight given to the VA's disability determination

so long as the record shows he expressly considered and closely scrutinized it. *Williams v.*

*Colvin*, No. CV414-043, 2016 WL 6133845, at *4 (S.D. Ga. Oct. 20, 2016), *report and*

*recommendation adopted,* No. CV416-043, 2016 WL 6652451 (S.D. Ga. Nov. 9, 2016) (citing *Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. App'x 907, 914 (11th Cir. 2015); *Kemp v. Astrue*, 308 Fed. App'x 423, 426 (11th Cir. 2009); *Adams v. Comm'r of Soc. Sec.*, 542 Fed. App'x 854, 856–57 (11th Cir. 2013). Accordingly, because the ALJ expressly stated that he gave the VA decision "great consideration," the record is clear that he closely scrutinized it, and he adequately explained his reasons for not giving the determination great or controlling weight, the ALJ did not err in this regard.

Furthermore, the ALJ's determination concerning Plaintiff's VA disability rating is supported by substantial evidence. The VA's disability rating is based solely on Plaintiff's PTSD and cites sixteen specific symptoms. R. 452. Many of those symptoms were either expressly contradicted or never mentioned in the record. For example, one symptom is the inability to establish or maintain effective work or social relationships. R. 452. Although Plaintiff testified in his hearing that he mostly stays to himself, he has also stated that he has cousins and "one or two" friends who spend time at his house helping out. R. 270. On the Disability Function Report Plaintiff completed for his social security claim, he stated that he goes to family's house daily, goes to church once a month, and talks to and watches TV with family members daily when they prepare meals for him. R. 435. In December 2014, he reported having a girlfriend and going to her uncle's house for Thanksgiving. R. 135. In May 2015, he was looking forward to the birth of his first child, and his girlfriend

accompanied him to several mental health appointments.[4] R. 80, 90, 92, 95, 114, 126, 729, 788.  Although they were no longer living together by February 2016, Plaintiff indicated that he maintained a friendly relationship with his girlfriend, and she was with him at his mental health visits in May and June 2016. R. 79, 90, 95, and 107.  On the PTSD assessment on August 4, 2016, he also reported having a "decent" relationship with a lady friend and that he occasionally goes on short walks with her. R. 70.  Finally, although Plaintiff said at the hearing that he sees his child once or twice a month, at his mental health appointment on December 20, 2017, he reported spending two hours *per day* with his son. R. 61, 271. This evidence does not support that Plaintiff has difficulty maintaining social relationships.[5]

Another symptom in the VA disability determination is the inability to adapt to stressful situations. R. 452.  However, during the course of his mental health treatment at the VA, Plaintiff experienced at least two deaths in his family (R. 92, 723), he and the mother of his child decided not to live together (R. 107), a family member was diagnosed with cancer (R. 102), and he was either evicted or forced to move because of a rent increase (Doc. 1 at 6; R. 61).  Despite these difficulties, Plaintiff managed to get completely sober

---

[4] The ALJ noted that Plaintiff has a girlfriend and they have one son. R. 32.  It appears that the mother of Plaintiff's child is referred to interchangeably as "girlfriend" or "wife" in the medical records. R. 80, 90, 92, 100, 121, 124, 135, 138, 142, 178, and 245.

[5] In his Complaint, Plaintiff asserts that he sees his son only at supervised visits when the child's mother is in town and that the ALJ was incorrect in stating that he has a girlfriend. Doc. 1 at 5–6. This contradicts what Plaintiff said at the hearing and what he reported to his mental health treatment providers. Further, regardless of whether Plaintiff has a girlfriend, it appears that he and the mother of his child, who is referenced throughout his medical records, maintained a friendly relationship during the three-year timeframe covered by his VA mental health treatment.

from drugs and alcohol, and he reduced his smoking from two packs per day in October 2014 to less than half a pack per day in December 2017. R. 64, 612.

Some of the sixteen symptoms on which the VA disability rating is based, such as deficiencies in judgment and thinking, delusions, neglect of personal appearance and hygiene, paranoia, and hallucinations, were expressly contradicted or denied multiple times in Plaintiff's medical records. R. 62, 64, 77, 80, 82, 90, 92, 95, 97, 108, 110, 115, 117, 126, 130, and 177. Two symptoms, difficulty in adapting to a work-like setting and impaired impulse control are never mentioned or demonstrated anywhere in the medical records. Thus, the VA disability rating is based on Plaintiff's having symptoms that were denied, contradicted, never mentioned, or not established in the record. Accordingly, the ALJ's determination that the VA rating was not entitled to great or controlling weight is supported by substantial evidence.

### 2.   Plaintiff's Treating Physicians' Opinions

With respect to the two notes signed by Plaintiff's treating physicians, an ALJ must give treating physician testimony substantial or controlling weight unless there is "good cause" not to do so, such as when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart,* 357 F.3d 1232, 1240–41 (11th Cir. 2004). In this case, the ALJ had good cause not to give Plaintiff's treating physicians substantial or controlling weight, and his determination in this regard is supported by substantial evidence.

### (a)   Dr. Barnard's Opinion

The first document, signed by Dr. Henry Barnard, states that Plaintiff is unable to work due to cancer in his right forearm. Doc. 13-1.  As mentioned above, this document was signed by Dr. Barnard on April 18, 2008, approximately one month *before* Plaintiff had surgery on May 14, 2008, to remove the cancer from his arm. Doc. 13-1; R. 494–95. The record in this case, as explained in more detail below, is replete with notes from Plaintiff's follow-up visits with his oncologist, Dr. Patel, indicating that Plaintiff made a full recovery with no limitations as a result of the cancer and excision of the mass. Thus, Dr. Barnard's opinion about Plaintiff's disability is not bolstered by the evidence and is completely inconsistent with the rest of the medical records in this case.

### (b)    Dr. Pilcher's Opinion

The second document, signed by Dr. Pilcher, Plaintiff's psychiatrist, states that Plaintiff is unable to work due to nerve damage in his right arm and PTSD.  Doc. 13-1 at 2.  The ALJ had good cause to discount Dr. Pilcher's opinion regarding Plaintiff's arm and his PTSD.  With respect to Plaintiff's arm, the record does not indicate that Dr. Pilcher ever examined Plaintiff's right arm or reviewed medical records relating to his right arm. Further, as explained more fully below, there is no objective evidence of nerve damage in Plaintiff's right arm. Additionally, Plaintiff saw Dr. Pilcher regularly beginning in 2014 and always reported a depressed mood, yet he never mentioned chronic arm pain as a possible cause of his depression until February 2016, eight months after he filed for disability alleging an onset date of 2012. R. 107.  Thus, even though Plaintiff claims he has suffered from constant and chronic pain since 2012 and even testified at his hearing that he cannot cook, drive, use the toilet, or take a shower alone because of his right arm (R. 271–

14

73), there is no mention of this in his mental health records until 2016. For these reasons, Dr. Pilcher's opinion regarding Plaintiff's arm is conclusory and inconsistent with the medical records.

With respect to Dr. Pilcher's opinion about Plaintiff's PTSD, the ALJ did not err in refusing to give the opinion controlling weight. First, Dr. Pilcher's opinion consists of two short sentences stating only that Plaintiff has been treated at the VA clinic since 2011 and has been unable to work since 2008 due to nerve damage and PTSD. Doc. 13-1 at 2. Thus, the opinion is conclusory in that it does not identify any symptoms produced by the PTSD, explain how Plaintiff's alleged symptoms prevent him from working, or contain any discussion whatsoever about Plaintiff's alleged limitations stemming from the PTSD.

Second, the opinion that Plaintiff is unable to work due to PTSD is not supported by the substantial evidence in this case. Plaintiff's records for VA mental health treatment begin on October 9, 2014. R. 76. The treatment records from that date indicate that the was made after Plaintiff called the Dothan Clinic on September 30, 2014, to ask if he had been diagnosed with PTSD. R. 176. The notes from that visit also indicate that he had not been seen by mental health since 2012, but there is no evidence of any mental health treatment from 2012 or any other time before October 2014 in the record.[6]   At that visit, Plaintiff reported that he did not feel hopeless about the present or his future. R. 172.  He denied having nightmares but reported difficulty sleeping, hypervigilance, avoiding crowds,

---

[6] Plaintiff claims the ALJ erred in finding that Plaintiff had not received mental health treatment since 2012; however, the ALJ's opinion actually cited to the October 9, 2014, visit and stated that, as of October 2014, Plaintiff had not received mental health treatment since 2012. R. 35.

avoiding triggers that remind him of combat, being startled awake at night, and hearing mumbling voices outside. R. 176.  However, he was observed to be well-groomed, calm, cooperative, and polite. R. 177.  His mood was okay, his affect was appropriate, he had no hallucinations or delusions, he had no tremors or gross abnormal movements, he had normal gait and no musculoskeletal abnormalities, and his insight and judgment were good. R. 177, 180.

On October 29, 2014, Plaintiff scored a two on a depression screen, which was negative for depression. R. 166, 170.  A week later on November 5, 2014, he had a positive screen for depression but was assessed as having a "mild or minimal risk" R. 143–45.  He reported a depressed mood, difficulty sleeping, and irritability. R. 141–42.  On November 19, 2019, he reported difficulty sleeping and being "somewhat depressed," but he was planning on going to a family get-together for Thanksgiving. R. 138–39.  On December 3, 2014, Plaintiff reported that his girlfriend was pregnant, that he had visited his girlfriend's uncle's house for Thanksgiving but missed seeing his family later that day, that he had not been drinking as much, that he had a history of getting into fights when drinking, but that he was trying to walk more often, was interested in returning to school, and was trying to decrease his smoking. R. 135–36.  On December 17, 2014, he reported difficulty with his temper and interacting with others. R. 132.

Plaintiff had no mental health appointments for the next five months.  On May 14, 2015, he reported that he was excited about the birth of his first child; that he had significantly reduced his drinking; that he had decreased his smoking from two packs per day to one pack per day; and that he had been putting the money he saved on cigarettes

into a savings account for his child. R. 126.  He was observed to be well-groomed, calm, cooperative, polite, goal-directed, logical, in a good mood, and with no impaired insight or judgment. R. 126.

His next mental health appointment was on June 4, 2015. R. 123.  He had missed a previous appointment due to a court appearance on a DUI. R. 123.  He reported difficulty sleeping, details about a recent verbal altercation, and that he had started looking into possible VA benefits. R. 124.  On July 13, 2015, he reported being upset over his driver's license being suspended because of the DUI, that he had difficulties sleeping because of this, and that he had not had anything to drink for the past couple of weeks. R. 120–21.  On July 14, 2015, he reported difficulty sleeping, irritability, and hyperarousal but that he had been sober for several months. R. 114, 117. His mood was described as angry because the VA was not helping him, but he was appropriately dressed, pleasant, calm, and cooperative with his cognition intact. R. 115, 117.

Plaintiff did not have another mental health appointment for seven months.  On February 18, 2016, he reported being frustrated with the VA and Social Security. R. 102. He reported "some difficulty" with a depressed mood. R. 102.  He said he lived alone but sometimes stayed with son and his son's mother, and at this point he was seeing his son twice a week. R. 102.  He reported "some difficulty" interacting with others and getting impatient with his family members, but he was again assessed at a "mild or minimal" risk level. R. 102, 104.  He stated that he had quit drinking, stopped using illicit substances, and reduced his smoking from two packs per day to five or six cigarettes per day. R. 102–03. He also reported irritability. R. 103.

On March 2, 2016, Plaintiff reported that he mostly stayed home and had sleep difficulties, but he maintained contact with his infant son and his son's mother and stayed at their house sometimes. R. 99–100.   He also reported that he was continuing to wait for a decision on his VA and social security claims. R. 100.  On April 12, 2016, he reported nightmares, hyperarousal, anxiety, and irritability, but he stated that he had had not used alcohol for almost a year and that, although he was living with his parents, he was still friendly with his girlfriend. R. 95, 97.  On May 10, 2016, he complained about problems getting disability and was in a bad mood because it was all he could think about. R. 90–92. On May 12, 2016, Plaintiff reported poor sleep and having experienced two deaths in his family. R. 87.  He said he stays at home except when he visits his ten-month old child or runs errands and that he had not used alcohol or drugs lately because he did not want legal problems as a result of using them. R. 87.  The doctor noted that Plaintiff continued to be "primarily focused" on his disability claim with the VA. R. 87–88.

On June 30, 2016, Dr. Pilcher wrote that Plaintiff's "main complaint" continues to be the VA disability process. R. 80.  Plaintiff reported that he felt like his medication was somewhat effective for anxiety and sleep, and he was observed to be cooperative and in good affective control despite his difficulties with obtaining disability. R. 80.  He said he had anxiety but had not been using drugs or alcohol. R. 82.

On August 4, 2016, Plaintiff was evaluated by Psychologist Aleada Lee-Tarver for PTSD relating to his application for VA disability benefits, and this appears to be the first and only time Dr. Tarver evaluated Plaintiff. R. 68.   He was emotional during the examination but cooperative, polite, and appropriately dressed and groomed. R. 77.  He

reported paranoia. R. 77.  He stated that he lives alone, has a "decent" relationship with a lady friend, goes on short walks with her, enjoys watching football, does not have any local friends but has a good friend in Maryland, and has been drug-free for four months. R. 70–72.  The psychologist noted that Plaintiff said he was having panic attacks[7] and nightmares and difficulty sleeping. R. 77.  He could not perform serial sevens but recalled two of three words following a brief time delay, recalled three of three digit strings forward, two of three digit strings backwards, and was oriented to time, place, and person. R. 77.  Following this evaluation, on September 8, 2016, the VA assigned Plaintiff a 100% disability rating. R. 477.

Plaintiff had no additional mental health treatments for the next fifteen months.  In the intervening time, at his hearing before the ALJ on June 9, 2017, Plaintiff described his PTSD as causing night sweats and nightmares, and he said he stays in his apartment most of the time. R. 270.  However, he said he has cousins and friends who come over and help him out. R. 270.  He also stated that he had visited with his young child in the last four to ten days and sees him once or twice a month. R. 270–71. He said he does not drink alcohol because of the medication he takes, and, if he uses marijuana, he will not take his medication because of a possible interaction. R. 274–75.

On November 17, 2017, the ALJ issued his decision this case. R. 39.  Within a month of the ALJ's decision, Plaintiff had a mental health appointment during which he reported that he had run out of medication, that his anxiety and sleep symptoms had

---

[7] This was the first and only time in the record where Plaintiff reported panic attacks.

worsened, and that he needed "yet another letter" regarding his symptoms for his SSI appeal. R. 61, 66.  He reported that he had remained sober from alcohol or drugs and was spending two hours a day with his son. R. 61.  He also reported anxiety and irritability but was observed to be alert, oriented, pleasant, calm, and cooperative with clear speech. R. 64.  He denied hallucinations and homicidal or suicidal ideations. R. 64.

Thus, a fair review of Plaintiff's mental health treatment records reveals that Plaintiff's major complaints were depression, difficulty sleeping, and irritability. However, as discussed above, the record also demonstrates that the Plaintiff maintains relationships with his family, a couple of friends, and the mother of his child.  He reported spending up to two hours per day with his son.  At one point he was looking forward to returning to school.  He can make logical decisions, such as refraining from drugs or alcohol in order to avoid legal problems, not mixing drugs or alcohol with his medication, and using the money he saved on cigarettes to start saving for his child.  He was able to get completely sober from alcohol and drugs and reduce his smoking from two packs per day to less than half a pack per day despite deaths in his family, a cancer diagnosis of a family member, a decision to no longer live with his girlfriend, and an eviction from his home. His doctors consistently reported that his cognition was intact, that he had no delusions or hallucinations, and that he was always well-dressed, groomed, calm, cooperative, and pleasant.  He enjoys watching football and goes on walks with his girlfriend.  In addition to these activities reported to his treatment providers, Plaintiff also indicated on the Disability Function Report that he goes to church once a month and that he can shop in stores, pay bills, count change, handle a savings account, and use a checkbook. R. 434–35.

For these reasons, as with Dr. Pilcher's opinion concerning Plaintiff's arm, the undersigned concludes that Dr. Pilcher's opinion about Plaintiff's PTSD is conclusory and that the evidence in this case supports a contrary finding. Furthermore, the opinion is inconsistent with the Dr. Pilcher's own medical records.  In his opinion, the ALJ expressly stated that he considered Dr. Pilcher's opinion in reaching his determination. R. 37.  He then explained that he assigned little weight to the opinion because there was no objective evidence to support why Plaintiff's right arm and PTSD "cause total disability and … no objective tests showing limitations of the claimant's right arm." R. 37.  Based on the record before the court, the ALJ had good cause to assign little weight to this opinion, and he did not err in this regard.

**B.      Whether substantial evidence supports the ALJ's RFC finding that Plaintiff can perform light work**.

Plaintiff next asserts that the ALJ's findings with respect to his RFC were incorrect and that he has a combination of impairments that are very severe and render him unable to work. Doc. 13 ¶¶ 1, 5.  The ALJ found that Plaintiff retained the RFC for a range of light work except that he could occasionally handle objects and write with his right hand and mentally was limited to low stress work with occasional decision making. R. 33.  In doing so, the ALJ stated that he considered all of Plaintiff's symptoms, the extent to which they can be reasonably accepted as consistent with the objective medical evidence, and opinion evidence. R. 34.  Based on the undersigned's review of the record in this case, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

### 1.   Plaintiff's Physical Impairments

Plaintiff claims that he has physical disabilities in his back and right arm that prevent him from working. In describing his back pain at the hearing, he testified that it hurts when he bends over and if he "walks too long" and that he needs help getting dressed. R. 269. When he completed the Social Security Function Report on October 15, 2015, he said he could walk 3–5 minutes before needing to stop. R. 436.   However, he reported that he relieves the pain with Tylenol and a pillow, and a physical examination of record showed a normal gait and no musculoskeletal abnormalities. R. 560, 718, and 729.   The record contains no x-rays or other images, physical examinations, range of motion tests, or other objective medical evidence regarding Plaintiff's back. In fact, Plaintiff said that no one has ever told him what causes the pain in his back. R. 269–70. Thus, while Plaintiff has complained of back pain since October 2014, it does not appear that he has ever been treated for back pain or that he has been diagnosed with degenerative disk disease.

In describing his right arm, Plaintiff testified at his hearing that it locks up sometimes and that he cannot grasp things. R. 268.   He said he cannot drive because he does not want his arm to lock up when he is going around a curve.[8] R. 271.  He claims he cannot drive with his left hand. R. 272.  He does not cook, and his grandmother prepares meals for him. R. 272.  He cannot do household chores and has a friend who stops by to clean. R. 271.  He claims that he has to have help going to the bathroom because of his right arm and that family members have to help him into the shower and lather up the rag

---

[8] The fact that Plaintiff was charged with driving under the influence of alcohol tends to contradict his claim that he is unable to drive a vehicle because of his hand.

for him. R. 273.  Also, despite claiming no impairments with his left arm, Plaintiff testified

that he can only lift five pounds or less using *both* arms. R. 271.

The ALJ found that the Plaintiff's medically determinable impairments could

reasonably be expected to cause some of his alleged symptoms.  However, he found that

the Plaintiff's statements concerning the intensity, persistence, and limiting effects were

not consistent with the medical evidence. R. 34–35.  The medical evidence in this case

supports this conclusion.

At a follow-up appointment on August 28, 2013, Dr. Patel, Plaintiff's oncologist,

noted that Plaintiff "had no complaints regarding his upper extremity strength" and good

strength in his right arm. R. 256.  A CT scan of the right arm on September 25, 2013,

showed "stable sclerosis" and "[n]o associate soft tissue mass or new abnormality." R. 210,

253.  All CT scans afterward showed similar findings. R. 200, 205, 227, 239, 248, 251, and

253.  The following year on August 28, 2014, Dr. Patel noted that Plaintiff had "good arm

functioning" and "good strength and sensation." R. 250.  Plaintiff made no complaints of

pain at either of these two visits. R. 210, 250, and 253.

Plaintiff's VA medical records for October 9, 2014, indicate a "chronic pain"

diagnosis, but these records mention only back pain. R. 172–75, 609–14.  On October 29,

2014, the 2008 lymphoma is acknowledged, but there is no report of pain. R. 160.  Plaintiff

also reported no tingling, weakness, or numbness. R. 161.  The note indicates that Plaintiff

was having "no acute pain not previously discussed," but the only reference to pain at this

visit is "chronic left abdomen pain." R. 160–66.  On November 5, 2014, and again on

December 3, 2014, his VA mental health records mention lymphoma, but there is no reference to arm pain. R. 136, 142.

When Dr. Patel saw Plaintiff again on December 11, 2014, he wrote that Plaintiff complained of "no upper extremity limitations" and showed "good strength and sensation" in his right arm. R. 244. On June 11, 2015, a few days before Plaintiff filed his disability application, Dr. Patel noted that Plaintiff's arm showed "good strength and sensation." R. 241. Plaintiff complained of abdominal pain and back pain at this visit but did not complain of arm pain. R. 241. Dr. Patel's notes from July 7, 2015, indicate that Plaintiff complained of abdominal pain but, again, no right arm pain. R. 236.

On June 16, 2016, Plaintiff reported swelling and tightness of his arm to Dr. Patel. R. 227–28. Dr. Patel noted that the arm had "some swelling," but a CT scan and venous doppler ultrasound showed normal findings. R. 187, 193, and 227. On August 31, 2016, he again saw Dr. Patel with no mention of arm pain. R. 217. On February 9, 2017, Plaintiff filled out a patient form indicating pain in his arm, back, and stomach, but there are no notes about a discussion of the pain with his doctor. R. 213–14. At this visit, Plaintiff informed Dr. Patel that he wanted to convert his follow-up visits to an as-needed basis. R. 213.

In determining Plaintiff's RFC, the ALJ correctly noted that the record contains no objective medical evidence of nerve damage in the Plaintiff's arm. R. 35. The ALJ also cited to the multiple visits on which Plaintiff presented to treatment for chronic pain but failed to mention his right arm. R. 35. Additionally, although Plaintiff discussed various stressors in his life with his mental health doctors, he never mentioned chronic or disabling

arm or back pain until February 18, 2016, when Dr. Pilcher noted that they discussed his

"long history" of being unable to work due to residual arm pain. R. 106–07, 746, 802.  After

that, Plaintiff reported at a mental health visit on March 2, 2016, that he had "ongoing

difficulty" with his hand, stating not that he had pain in his arm but that he had lost feeling

in his hand and arm. R. 99, 739, 795.  Other than these two visits, Plaintiff's mental health

records contain no mention of difficulties with his arm or hand.  Accordingly, although

Plaintiff claims he is unable to do light work because he may have to call out of work three

or four times per week with pain from his arm or back, the undersigned finds that the ALJ's

RFC determination accommodates Plaintiff's physical impairments and is supported by

substantial evidence.

### 2.    <u>Plaintiff's Mental Impairment</u>

Plaintiff also claims that his mental impairment of PTSD also prevents him from

performing light work as described in the ALJ's RFC determination. Doc. 1 at 5–7.  In his

decision, the ALJ provided a thorough analysis of Plaintiff's mental health treatment

records. R. 35–37.  As explained in detail above, those records demonstrate that Plaintiff

maintains relationships with his family, friends, and the mother of his child.  At different

points during his treatment, he reported spending up to two hours per day with his son and

was looking forward to returning to school.  He can make logical decisions, such as

refraining from drugs or alcohol, not mixing drugs or alcohol with medication, and saving

money for his child.  Despite having to deal with stressors of multiple deaths in his family,

a family member's cancer diagnosis, deciding not to live with the mother of his child, and

an eviction, Plaintiff was able to get completely sober from alcohol and drugs and reduce

his smoking from two packs per day to less than half a pack per day.  His treatment providers consistently reported that his cognition was intact, that he had no delusions or hallucinations, and that he was always well-dressed, groomed, calm, cooperative, and pleasant.  He enjoys watching football, goes on walks with his girlfriend, and goes to church once a month. He can shop in stores, pay bills, count change, handle a savings account, and use a checkbook.  Based on Plaintiff's reported activities, the ALJ concluded that the record failed to document persistent and disabling loss of functional capacity resulting from the claimant's severe impairments and that the record was inconsistent with Plaintiff's allegations of "totally incapacitating symptomology." R. 37.  Although Plaintiff claims he cannot do light work because he may have a mental breakdown and get upset and cry all day, there is clearly no support for this claim in the record.  Thus, for the same reasons that the record fails to support the VA's disability determination and Plaintiff's treating physicians' opinions, the undersigned concludes that the ALJ's RFC determination that Plaintiff can perform light work with low stress and occasional decision-making accommodates Plaintiff's mental impairments is supported by substantial evidence.

## VII.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Commissioner's decision be AFFIRMED.

It is further

ORDERED that the Plaintiff is DIRECTED to file any objections to the said Recommendation on or before **July 25, 2019**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is

objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The Plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993)("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 11th day of July, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE